**OUTTEN & GOLDEN LLP**
Rachel Bien
Olivia J. Quinto
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDITH HERNANDEZ and ANA O'KEEFE, on behalf of themselves and those similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>UBS AG and UBS FINANCIAL SERVICES, INC.,<br><br>          Defendants. | Case No. 15 Civ. 230 (VSB) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE
CLASS ACTION SETTLEMENT, AND APPROVAL OF THE FLSA SETTLEMENT**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ..................................................... 2

I.      Claims ................................................................................................................. 2

II.     Investigation and Discovery .............................................................................. 2

III.    Mediation ............................................................................................................ 3

SUMMARY OF THE SETTLEMENT TERMS ........................................................... 3

I.      The Settlement Fund .......................................................................................... 3

II.     The Class ............................................................................................................ 3

III.    Releases .............................................................................................................. 3

IV.     Allocation Formula ............................................................................................ 4

IV.     Attorneys' Fees, Litigation Costs, and Service Awards .................................... 5

VI.     Settlement Claims Administrator ....................................................................... 5

VII.    Objections and Exclusions ................................................................................. 6

ARGUMENT ................................................................................................................. 6

I.      The Settlement Class Meets the Legal Standard for Class Certification ........... 6

        A.      Numerosity ............................................................................................... 7

        B.      Commonality ............................................................................................ 7

        C.      Typicality ................................................................................................. 8

        D.      Adequacy of the Plaintiff and Her Counsel ............................................ 9

        E.      Certification Is Proper Under Rule 23(b)(3) ......................................... 10

                1.      Common Questions Predominate ............................................... 10

                2.      A Class Action Is a Superior Mechanism ................................. 11

II.   The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved 12

    A.   The Proposed Settlement Is Procedurally Fair.................................................... 12

    B.   The Proposed Settlement Is Substantively Fair................................................. 13

        1.   Litigation Through Trial Would be Complex, Costly, and Long
            (*Grinnell* Factor 1). ................................................................... 14

        2.   The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)........ 14

        3.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve
            the Case Responsibly (*Grinnell* Factor 3)............................................. 15

        4.   Plaintiff Would Face Risk If the Case Proceeded
            (*Grinnell* Factors 4 and 5)...................................................... 16

        5.   Maintaining the Class Through Trial Would Not Be Simple
            (*Grinnell* Factor 6). ................................................................... 17

        6.   Defendants' Ability to Withstand a Greater Judgment Is Not
            Determinative (*Grinnell* Factor 7) ....................................... 17

        7.   The Settlement Fund Is Substantial, Even in Light of the Best  Possible
            Recovery and the Attendant Risks of Litigation
            (*Grinnell* Factors 8 and 9)........................................................ 18

    C.   The Court Should Overrule the Objection ....................................................... 19

III.   Approval of the FLSA Settlement Is Appropriate Under Federal Law....................... 22

CONCLUSION ................................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                       **PAGE(S)**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)....................................................................................................10, 11

*Ansoumana v. Gristede's Oper. Corp.*,
   201 F.R.D. 81 (S.D.N.Y. 2001) ...............................................................................22

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000),...........................................................14, 15, 17

*Ballinger v. Advance Mag. Pubs., Inc.*,
   No. 13 Civ. 4036, 2014 WL 7495092 (S.D.N.Y. Dec. 29, 2014)................................. *passim*

*Cagan v. Anchor Sav. Bank FSB*,
   No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990).........................................18, 21

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)...................................................................................12, 13, 17

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995).....................................................................................7

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)......................................................................................12, 14

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006).....................................................................................6

*Dziennik v. Sealift, Inc.*,
   No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007)..............................9

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   Nos. 05 Civ. 10240, 05 Civ. 10287, 05 Civ. 10515, 05 Civ. 10610,
   06 Civ. 00304, 06 Civ. 00347, 06 Civ. 01684,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007) ..........................................................12

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
   No. 12 Civ. 3532, 2015 WL 2374515 (E.D.N.Y. May 18, 2015)...........................20

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005)............................................................................ *passim*

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982).................................................................................................7

iv

*Glatt v. Fox Searchlight Pictures, Inc.*,
   293 F.R.D. 516 (S.D.N.Y. 2013) ..................................................................10

*Goldberger v. Integrated Resources, Inc.*,
   209 F.3d 43 (2d Cir. 2000)...........................................................................12

*Green v. Wolf Corp.*,
   406 F.2d 291 (2d Cir. 1968)..........................................................................11

*Herman v. RSR Sec. Servs., Ltd.*,
   172 F.3d 132 (2d Cir. 1999)..........................................................................21

*Hoffmann-LaRoche Inc. v. Sperling*,
   493 U.S. 165 (1989)......................................................................................21

*Inclan v. New York Hospitality Grp.*,
   12 Civ. 4498, 2015 WL 1399599 (S.D.N.Y. Mar. 26, 2015) .................................21

*In re Initial Pub. Offering Sec. Litig.*,
   471 F.3d 24 (2d Cir. 2006)............................................................................10

*In re Ira Haupt & Co.*,
   304 F. Supp. 917 (S.D.N.Y. 1969)................................................................16

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
   109 F.R.D. 391 (S.D.N.Y. 1986) ...................................................................8

*Lizondro-Garcia v. Kefi LLC*,
   300 F.R.D. 169 (S.D.N.Y. May 29, 2014)...........................................8, 9, 10, 11

*Lizondro-Garcia v. Kefi LLC*,
   No. 12 Civ. 1906, 2014 WL 4996248 (S.D.N.Y. Oct. 7, 2014) ....................13, 22

*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 (11th Cir. 1982) ....................................................................22

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)............................................................14

*Marisol A. v. Giuliani*,
   126 F.3d 373 (2d Cir. 1997)............................................................................8

*McBean v. City of New York*,
   228 F.R.D. 487 (S.D.N.Y. 2005) ...................................................................10

*McKenna v. Champion Int'l. Corp.*,
   747 F.2d 1211 (8th Cir. 1984) ......................................................................22

*Morris v. Affinity Health Plan, Inc.*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012)............................................................9, 15, 21

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010).....................................................................................17

*Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ............................................................................18, 21

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) .............................................................................16

*Pierce v. Rosetta Stone, Ltd.*,
  No. 11 Civ. 01283, 2013 WL 1878918 (N.D. Cal. May 3, 2013) ...........................20

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993)........................................................................................8

*Slomovics v. All for a Dollar, Inc.*,
  906 F. Supp. 146 (E.D.N.Y. 1995) ...........................................................................14

*Spann v. AOL Time Warner, Inc.*,
  No. 02 Civ. 8238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005)...............................12

*Toure v. Amerigroup Corp.*,
  No. 10 Civ. 5391, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012) ..............................13

*Toure v. Cent. Parking Sys. of N.Y.*,
  No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007).............................9

*Velez v. Majik Cleaning Serv., Inc.*,
  No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007)..............................16

*In re Visa Check/MasterMoney Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001).............................................................................10, 11

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005)........................................................................................12

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004)......................................................................................15

*Willix v. Healthfirst, Inc.*,
  No. 07 Civ. 1143, 2011 WL 754862(E.D.N.Y. Feb. 18, 2011) ...............................15

*Wright v. Stern*,
  553 F. Supp. 2d 337 (S.D.N.Y. 2008).......................................................................15

**Other Authorities**

Federal Rule of Civil Procedure 23 ......................................................................6, 7, 21

## INTRODUCTION

Plaintiff Edith Hernandez[1] ("Plaintiff") submits this Memorandum of Law in support of her Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Plaintiff's Motion for Final Approval"). The parties' $1,312,500 settlement of this wage and hour class and collective action satisfies all of the criteria for final approval. Plaintiff seeks an order: (1) finally certifying the settlement class described below; (2) approving as fair and adequate the class-wide settlement of this action, as set forth in the Joint Stipulation of Settlement and Release ("Settlement Agreement);"[2] and (3) approving the settlement of the Fair Labor Standards Act ("FLSA") claims.

On April 1, 2015, the Court took the first step in the settlement approval process by granting preliminary approval, directing that notice be mailed to Class Members, and setting the date for the final fairness hearing. ECF No. 12. Class Members have been notified of the terms of the settlement, the monetary relief, the allocation formula, and their right to opt out of or object to the settlement. Ex. B (Decl. of Sandy Peneda-Sibley ("Peneda Decl.")) ¶¶ 4-13; *Id.* Ex. A (Class Notice). For the reasons stated below, Plaintiff respectfully requests the Court grant final approval. Defendants do not oppose this motion.

---

[1]    As discussed below, Plaintiff Ana O'Keefe filed an objection to the settlement. Thus, this motion is made by Ms. Hernandez as class representative on behalf of the class.

[2]    The Settlement Agreement is attached as Exhibit A to the Declaration of Rachel Bien in Support of Plaintiff's Motion for Final Approval ("Bien Decl."). Unless otherwise indicated, all exhibits are attached to the Bien Decl. and all capitalized terms have the same meaning as set forth in the Settlement Agreement.

## FACTUAL AND PROCEDURAL BACKGROUND

**I.      Claims**

Plaintiff worked as a Client Advisor Associate ("CAA") for Defendants in New York. ECF No. 1 (Compl.) ¶¶ 1, 12, 17.  She claims that Defendants misclassified her and other CAAs as exempt from the overtime requirements of the FLSA and the New York Labor Law ("NYLL"), and failed to pay them overtime for hours that they worked over 40 in many workweeks.  *Id*. ¶¶ 1, 13, 18, 36-37.

**II.     Investigation and Discovery**

On October 24, 2013, Plaintiff advised Defendants of her claims and invited Defendants to engage in an informal exchange of information and pre-litigation settlement negotiations. Bien Decl. ¶ 12.  The parties entered into a tolling agreement, which tolled the claims of the Plaintiff and putative class and collective members during the negotiations.  *Id*. ¶ 13.

Defendants produced information about the class, including the names of class members, their rates of pay, their dates of employment, and the locations at which they worked.  *Id*. ¶ 15. Defendants also produced information it had obtained from some class members regarding the number of overtime hours they estimated that they worked from 2007 through approximately 2013.  *Id*. ¶ 16.

Class Counsel analyzed the information that Defendants provided and created a detailed damages analysis.  *Id*. ¶ 17.  Class Counsel also interviewed and obtained relevant information from several other CAAs, including former CAAs, Dinorah Dijols and Maria Robayo, which they used to analyze Defendants' data.  *Id*. ¶ 18.

2

### III.    Mediation

The parties participated in three mediation sessions with an experienced employment law mediator, Dina Jansenson of JAMS, on July 7, July 30, and August 25, 2014.  Bien Decl. ¶ 20. On August 25, 2014, the parties reached agreement on the material terms of a settlement, which they memorialized in a Term Sheet.  *Id*. ¶ 23.  The parties then negotiated a detailed Settlement Agreement, which all parties executed.  *Id*. ¶ 24.  The parties conducted their negotiations on an arm's-length basis.  *Id*. ¶ 25.

**SUMMARY OF THE SETTLEMENT TERMS**

### I.   The Settlement Fund

The $1,312,500 settlement fund will cover all settlement payments, attorneys' fees and costs, service payments, the Claims Administrator's fees, and any taxes incurred directly or indirectly as a result of investing the Settlement Payment.  Ex. A (Settlement Agreement) § 4.1(A).

### II.    The Class

The Class consists of the current and former CAAs listed on Exhibits A-C of the Settlement Agreement.  *Id*. § 1.4.

### III.    Releases

Class Members who did not timely opt-out will release Defendants from the state law wage claims alleged in the complaint or that could have been alleged in the complaint through November 5, 2013.   Ex. A (Settlement Agreement) § 4.7(A).  By endorsing and depositing their settlement checks, which will contain release language for claims under the FLSA, Class Members will show their intent to join the settlement as collective members and will release their FLSA claims.  *Id*. § 4.7(B).

3

**IV.    Allocation Formula**

The allocation formula is based on the alleged relative damages incurred by Class Members depending on the following criteria:

First, whether Defendants already paid a portion of Class Members' unpaid overtime.  In or around the late summer and early fall of 2013, Defendants asked their current CAAs to self-report their estimates of the number of overtime hours they worked between 2007 and 2013. Bien Decl. ¶ 32.  Some CAAs responded to the request and Defendants paid them for all overtime hours reported.  *Id*.  Defendants did not pay any liquidated damages on top of the overtime.  *Id*.  Thus, the allocation for this group of Class Members represents only liquidated damages, which Defendants contest they are owed.  *Id*.; Ex. A (Settlement Agreement) § 4.5(B)(3).

Second, as part of the same self-reporting initiative, some Class Members reported their overtime hours worked, but Defendants did not pay them.  Bien Decl. ¶ 33.  Their portion of the settlement reflects the hours that they reported plus a portion for liquidated damages, which Defendants contest they are owed.  *Id*.; Ex. A (Settlement Agreement) § 4.5(B)(1).

The third group of Class Members consists of former CAAs who did not report overtime hours worked because they were not current employees and current CAAs who did not respond to Defendants' request to self-report.  Bien Decl. ¶ 34.  Their portion of the settlement was determined based on the salary information that Defendants provided and estimates of the number of overtime hours worked a week.  *Id*.  This amount will be divided on a *pro-rata* basis depending on the number of weeks that each Class Member worked for Defendants during the applicable statute of limitations periods.  *Id*.; Ex. A (Settlement Agreement) § 4.5(B)(2).

4

Each Class Member who did not opt out pursuant to the exclusion process set forth in the
Settlement Agreement will be mailed a settlement check.  Bien Decl. ¶ 35; Ex. A (Settlement
Agreement) § 4.5(D).  Class Members will have 90 days to cash or deposit their settlement
checks.  Bien Decl. ¶ 35; *Id*. § 4.5(E).  Checks that are not cashed after 90 days will be
redistributed to Class Members who redeemed their checks or, if a redistribution is not
administratively feasible, will be donated to the *cy pres* recipient.  Bien Decl. ¶ 35; *Id*. § 4.5(F).
There will be no reversion of any of the fund to Defendants.  Bien Decl. ¶ 36; *Id*. § 4.5(G).

## V.      Attorneys' Fees, Litigation Costs, and Service Awards

Class Counsel has filed a Motion for Attorneys' Fees and Reimbursement of Expenses
and a Motion for Approval of a Service Payment for Plaintiff Hernandez and Other Settlement
Payments for Maria Robayo and Dinora Dijols simultaneously with this Motion.

## VI.     Settlement Claims Administrator

The parties retained Angeion Group, a third-party claims administrator, to administer the
settlement.  Bien Decl. ¶ 42.  On April 21, 2015, Angeion Group mailed the Court-approved
Notice to 49 individuals whose names and addresses were provided by Defendants.  Ex. B
(Peneda Decl.) ¶ 7.  Angeion Group also e-mailed the Notice to 16 Class Members with e-mail
addresses and did not receive notice of any undelivered e-mails.  *Id*.  After the Notices were
mailed, Angeion Group received two Notices returned as undeliverable by the Post Office
without updated addresses.  *Id*. ¶ 10.  Angeion Group re-mailed these notices after receiving
updated contact information.  *Id*.

After receiving his Notice, Class Member Carlos Naupari contacted Class Counsel to
determine why his settlement payment was less than he expected.  Bien Decl. ¶ 45.  After
investigating the issue, Class Counsel determined that Mr. Naupari's award had been

5

miscalculated. *Id*. Defendants disagreed and believed that his award was properly calculated. *Id*. In an effort to resolve the matter, and because Defendants do not object to this recalculation, Class Counsel asked the claims administrator to recalculate the Class Members' awards based on this change to Mr. Naupari's award. *Id*. Subject to the Court's approval of this change, Mr. Naupari's award will increase. *Id*. As a result, however, the awards for the other Class Members identified in Exhibit B will slightly decrease by approximately 3.86%. *Id*.

## VII.   Objections and Exclusions

The Notice advised Class Members, among other things, that they could object to or exclude themselves from the settlement. Ex. B (Peneda Decl.) Ex. A (Notice) at 1-2, ¶¶11-13, 16-17. No Class Member excluded him- or herself from the settlement. Ex. B (Peneda Decl.) ¶ 12. One of the Plaintiffs, Ana O'Keefe, filed an objection on May 26, 2015. *Id*. ¶¶ 11. Ms. O'Keefe objects on the grounds that: (1) the settlement uses different methods to allocate payments to "former" CAAs – i.e., those whom Defendants did not invite to report their overtime because they were not current employees at the time that UBS reclassified the CAA position – and current CAAs – i.e., those who reported their overtime estimates to Defendants; and (2) the amount of the settlement apportioned to liquidated damages is not sufficient. Ex. B (Peneda Decl.) Ex. C (O'Keefe Objection) at 1. As discussed below, the Court should overrule Ms. O'Keefe's objection.

## ARGUMENT

### I.   The Settlement Class Meets the Legal Standard for Class Certification.

When faced with a proposed class action settlement, courts first examine whether the settlement class can be certified. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). On April 1, 2015, the Court preliminarily certified the settlement class. ECF No. 12.

6

Plaintiff respectfully requests that the Court grant final certification because the settlement class meets all of the requirements of Federal Rule of Civil Procedure 23 ("Rule 23").

Under Rule 23, a class action may be maintained if all of the requirements of Rule 23(a) are met, as well as one of the requirements of Rule 23(b).  Rule 23(a) requires that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Rule 23(b)(3) requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### A.    Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "[N]umerosity is presumed at a level of 40 members . . . ."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Plaintiff satisfies this threshold because there are 47 Class Members.  Ex. A (Settlement Agreement) Exs. A-C.

### B.    Commonality

The class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Although the claims need not be identical, they must share "common questions of fact or law."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005).  There must be a "unifying thread" among the claims to warrant class

certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).

Here, Plaintiff and the Class all worked in the same position and allege that Defendants violated the NYLL in the same way by classifying the position as exempt from overtime requirements. This common factual and legal question is sufficient to satisfy commonality for settlement purposes. *See Ballinger v. Advance Mag. Pubs., Inc.*, No. 13 Civ. 4036, 2014 WL 7495092, at *4 (S.D.N.Y. Dec. 29, 2014) (commonality satisfied where class members all had common duties and alleged they were misclassified as non-employees); *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 175 (S.D.N.Y. May 29, 2014) (commonality satisfied where alleged violations arose from same overtime policy).

### C.    Typicality

Typicality is also satisfied because "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 373, 376 (2d Cir. 1997). "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182. "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

Plaintiff's claims arise from the same factual and legal circumstances as the Class Members' claims. Plaintiff and Class Members all worked for UBS as CAAs and allege that they suffered the same violation of the law. This satisfies the typicality requirement. *See*

*Ballinger*, 2014 WL 7495092, at *5 (typicality is satisfied when employees do "similar work and were classified . . . under the same corporate policy"); *Lizondro-Garcia*, 300 F.R.D. at 175 (typicality requirement satisfied where employees worked in the same positions and were "subjected to the same overtime [practices] as members of the proposed . . . class."); *Morris v. Affinity Health Plan, Inc.,* 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012) (typicality established where "Plaintiff's [overtime] claims arose from the same factual and legal circumstances that form the bases of the Class Members' claims").

### D.     Adequacy of the Plaintiff and Her Counsel

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that the named representative will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney*, 443 F.3d at 268).  "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998)) (internal quotation marks omitted).

Plaintiff Hernandez is adequate to serve as a class representative because she does not have interests that are antagonistic to or at odds with the Class Members' interests.[3]  *See*

---

[3]      As discussed above, Ms. O'Keefe filed an objection to the settlement.  Until that time, Class Counsel believed that she also adequately represented the Class.  Because she now opposes final approval, however, Class Counsel has not identified her as a class representative.  Ms. O'Keefe has indicated that she will appear at the final approval hearing to present her objection.

*Ballinger*, 2014 WL 7495092, at \*5; *Lizondro-Garcia,* 300 F.R.D. at 176.  Outten & Golden LLP is also adequate to serve as class counsel.  Courts have noted that the firm "routinely represents plaintiffs in employment litigation in th[e] [SDNY] and has appeared in many major FLSA and Labor Law cases," and have held that, based on this work, there is "no question that it will prosecute the interests of the class vigorously."  *See Ballinger*, 2014 WL 7495092, at \*7; *see also Glatt v. Fox Searchlight Pictures, Inc.*, 293 F.R.D. 516, 538 (S.D.N.Y. 2013) (appointing Outten & Golden LLP as class counsel).

### E.   Certification Is Proper Under Rule 23(b)(3).

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

### 1.   Common Questions Predominate.

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (citation omitted), *abrogated on other grounds by In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) (internal quotation marks and citation omitted). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues."  *Id.* at 139.  Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

10

Here, Plaintiff's common contention – that Defendants misclassified CAAs as exempt from overtime – predominates over any factual or legal variations among Class Members. *See Ballinger*, 2014 WL 7495092, at *6 (predominance met where the defendant implemented a single policy classifying its interns as non-employees); *Lizondro-Garcia*, 300 F.R.D. at 177 (finding predominance met where "[t]he central issues in this litigation are whether defendants had policies that denied their employees overtime . . . . Because defendants' practices applied to members of the putative NYLL class uniformly, questions regarding the legality of those policies 'are about the most perfect questions for class treatment'") (quoting *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007)).

## 2. A Class Action Is a Superior Mechanism.

Plaintiff also satisfies the superiority requirement. Superiority analyzes whether "the class action device … [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[4]

---

[4] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial"); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement."). Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In re Visa Check*, 280 F.3d at 140 (citation omitted).

11

The class action device is superior in this case because it is unlikely that individual Class Members would have brought their claims if not for this case.  *See* Fed. R. Civ. P. 23(b)(3).  In addition, employing the class device here will achieve economies of scale, will conserve the resources of the judicial system, and will avoid the waste and delay of repetitive proceedings and inconsistent adjudications of similar issues and claims.  *See Ballinger*, 2014 WL 7495092, at *6 (class adjudication will conserve resources).

## II.    The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved.

Rule 23(e) requires court approval for a class action settlement to insure that it is procedurally and substantively fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e).  To determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  To determine substantive fairness, courts evaluate whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc*., 209 F.3d 43 (2d Cir. 2000).

Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits.  *Wal-Mart Stores*, 396 F.3d at 116 (citation omitted); *see also Spann v. AOL Time Warner, Inc*., No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions.").

### A.  The Proposed Settlement Is Procedurally Fair.

A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also*

12

*D'Amato*, 236 F.3d at 85.  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, Nos. 05 Civ. 10240, 05 Civ. 10287, 05 Civ. 10515, 05 Civ. 10610, 06 Civ. 00304, 06 Civ. 00347, 06 Civ. 01684, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

Here, the settlement was reached after Class Counsel conducted a thorough investigation and obtained and analyzed damages information from Defendants, and after extensive arm's-length negotiations facilitated by a mediator.  Bien Decl. ¶¶ 14-25.  *See Lizondro-Garcia v. Kefi LLC*, No. 12 Civ. 1906, 2014 WL 4996248, at *3-4 (S.D.N.Y. Oct. 7, 2014) (finding settlement procedurally fair where parties exchanged data relevant to the claims, engaged in arm's-length negotiations, and participated in a settlement conference); *Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs conducted a thorough investigation and enlisted the services of an experienced employment law mediator).

### B.    The Proposed Settlement Is Substantively Fair.

In *Grinnell*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement.  495 F.2d 448.  The *Grinnell* factors guide district courts in making this determination.  They are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;  (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement

13

fund to a possible recovery in light of all the attendant risks of litigation.  *Id.* at 463.  All of the *Grinnell* factors weigh in favor of final approval of the settlement.

### 1.    Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1).

By reaching a settlement prior to dispositive motions or trial, Plaintiff seeks to avoid significant expense and delay, and ensure a recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato*, 236 F.3d 78.  Although this case is relatively small – there are approximately 47 Class Members – it still involves a fact-intensive inquiry into their classification as exempt employees, damages, and claims under federal and state law.

Extensive discovery would be required to establish liability and damages and to support Plaintiff's anticipated class certification motion and Defendants' opposition to such motion.  Both sides would likely move for summary judgment on the liability questions, which would require further briefing.  If the Court determined that fact disputes preclude summary judgment, a fact-intensive trial on both liability and damages would be necessary.  The settlement, on the other hand, provides significant relief in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of final approval.

### 2.    The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."  *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (citation omitted).  The lack of class member objections "may itself be taken as evidencing the fairness of the settlement."  *Slomovics v. All for*

14

*a Dollar, Inc.*, 906 F. Supp. 146, 150 (E.D.N.Y. 1995) (quoting *Weiss v. Drew Nat'l*, 465 F.

Supp. 548, 551 (S.D.N.Y.1979)).

Here, the Notice sent to Class Members included an explanation of the allocation formula

and an estimate of each Class Member's award.  Ex. B (Peneda Decl.) Ex. C (Notice) at 1-2.

The Notice also informed Class Members of their right to object to or exclude themselves from

the settlement and explained how to do so.  *Id*. at 1-2, 5-6.  No Class Member requested to be

excluded and there was only one "objection" from Plaintiff O'Keefe who was present at the

mediation sessions and who previously agreed to and signed off on the settlement.  Bien Decl. ¶¶

21, 24; Ex. B (Peneda Decl.) ¶ 11.  This supports final approval.  *See e.g., Morris*, 859 F. Supp.

2d at 619 (where 16 out of 1,500 class members excluded themselves and only one objected, the

"response demonstrates strong support for the settlement"); *Willix v. Healthfirst, Inc.,* No. 07

Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (granting final approval of the

settlement where 7 out of 2,025 class members objected and 2 opted out); *Wright v. Stern,* 553 F.

Supp. 2d 337, 345 (S.D.N.Y. 2008) ("The fact that the vast majority of class members neither

objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and

adequate.").

### 3.    <u>Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).</u>

Although preparing this case through trial would require many more hours of discovery

for both sides, the parties have completed enough discovery to recommend settlement.  The

proper question is "whether counsel had an adequate appreciation of the merits of the case before

negotiating."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (citation

omitted).  "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are

not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig*, 80 F. Supp. 2d at 176 (internal punctuation and citation omitted).

The parties' discovery here meets this standard.  As discussed above, the parties exchanged documents and data that were relevant to the claims and allowed them to evaluate the damages on a classwide basis.  Bien Decl. ¶¶ 14-19.  In addition, the parties engaged in arm's-length negotiations and three sessions with a mediator, who assisted the parties to understand the strengths and weaknesses of their respective positions. *Id.* ¶¶ 20-25.  Based on these circumstances, the parties were equipped to reach a settlement. *See Frank*, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanged information related to the claims and where counsels' negotiations, while "cooperative," had "been in no way collusive").

### 4.  **Plaintiff Would Face Risk If the Case Proceeded (*Grinnell* Factors 4 and 5).**

Although Plaintiff believes her case is strong, it is subject to risk.  "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007).

Here, there is risk as to both liability and damages.  Defendants claim that CAAs were properly classified as exempt and contest the number of hours that Plaintiff claims she and other CAAs worked.  Although Plaintiff believes she has a strong likelihood of prevailing on the

16

exemption question, establishing damages, including that CAAs consistently worked over 40 hours a week, presents risk given the absence of contemporaneous time records.  Weighing the benefits of the settlement – particularly, the substantial amounts that Class Members will receive – against the available evidence and the risks associated with proceeding with the litigation, the settlement amount is reasonable.  This factor weighs in favor of final approval.

### 5.  Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6).

The risk of obtaining class and collective certification and maintaining it through trial is also present.  Class Members worked under different factual circumstances, which Defendants likely would have argued precluded certification, and may have been subject to different defenses.  Prior defendants have prevailed on these arguments.  *See, e.g., Myers v. Hertz Corp.*, 624 F.3d 537, 548-49 (2d Cir. 2010) (affirming denial of class certification involving allegedly misclassified rental car managers and noting the fact-intensive nature of the exemption inquiry). Settlement eliminates this risk, expense, and delay.  This factor favors final approval.

### 6.  Defendants' Ability to Withstand a Greater Judgment Is Not Determinative (*Grinnell* Factor 7).

It is likely that Defendants could withstand a greater judgment.  However, even if they could, their ability to do so, "standing alone, does not suggest that the settlement is unfair."  *In re Austrian & German Bank Holocaust Litig*, 80 F. Supp. 2d at 178 n.9; *see also Ballinger*, 2014 WL 7495092, at *3.  Therefore, this factor does not preclude the Court from granting final approval.

**7.      The Settlement Fund Is Substantial, Even in Light of the Best
Possible Recovery and the Attendant Risks of Litigation
(*Grinnell* Factors 8 and 9).**

The $1,312,500 settlement fund is substantial given the value of the claims and the

litigation risks.  Whether a settlement amount is reasonable "does not involve the use of a

mathematical equation yielding a particularized sum."  *Frank*, 228 F.R.D. at 186 (quoting *In re*

*Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178) (internal quotation marks

omitted).  "Instead, there is a range of reasonableness with respect to a settlement – a range

which recognizes the uncertainties of law and fact in any particular case and the concomitant

risks and costs necessarily inherent in taking any litigation to completion."  *Id.* (quoting *Newman*

*v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)) (internal quotation marks omitted).  "[T]here is no

reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even

a thousandth part of a single percent of the potential recovery."  *Grinnell*, 495 F.2d at 455 n.2.

"It is well-settled law that a cash settlement amounting to only a fraction of the potential

recovery will not *per se* render the settlement inadequate or unfair."  *Officers for Justice v. Civil*

*Serv. Comm'n of the City and Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982)

(citations omitted and emphasis added); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ.

3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class

settlement where the "best possible recovery would be approximately $121 million").

Here, the settlement represents a substantial recovery for Class in light of the risks.  The

average Class Member award (net of attorneys' fees and costs, service awards, claims

administration fees, and Defendants' share of payroll taxes) is approximately $17,395.  Ex. B

(Peneda Decl.) ¶ 9.  Class Member awards range from approximately $316 to $71,812.  *Id.*

Based on Class Counsel's damages calculations, the settlement represents approximately 62% of

18

the total classwide damages.  Bien Decl. ¶ 39.  Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

### C.       The Court Should Overrule the Objection.

The Court should overrule Ms. O'Keefe's objections because they do not have merit. First, Ms. O'Keefe was present during the three mediation sessions, was aware of the calculation methods that were negotiated, and had a full opportunity to object to those methods during the mediations and negotiation process.  Nonetheless, Ms. O'Keefe signed the Settlement Agreement which spells out how the payments will be allocated.  For this reason, the Court should overrule her objection.

 Second, and to the extent the Court considers the objection, it was reasonable to use different methods to calculate the damages of former CAAs (those whom Defendants did not invite to report overtime estimates, including Ms. O'Keefe) and current CAAs (those who were employees at the time that Defendants reclassified the position and were asked to self-report overtime hours worked).  In particular, with respect to the former CAAs, overtime information was not available, and thus Class Counsel reasonably made assumptions about overtime hours worked on an aggregate basis, taking into account the number of hours reported by other CAAs. In addition to relying on the self-reported estimates, the hours assumptions were also based on Plaintiff's estimates of her overtime hours, Ms. O'Keefe's estimates, and estimates provided to Class Counsel through class member interviews.  Bien Decl. ¶¶ 14-19.  Under the Settlement Agreement, the damages allocated to former CAAs will be distributed *pro rata* based on the number of weeks each CAA worked.  Ex. A (Settlement Agreement) § 4.5.  Courts routinely approve this method of allocating overtime damages even though the allocation is not based on

19

precise, worker-by-worker estimates of hours worked.  *See, e.g.*, *Flores v. Mamma Lombardi's of Holbrook, Inc.*, No. 12 Civ. 3532, 2015 WL 2374515, at *2 (E.D.N.Y. May 18, 2015) (approving FLSA settlement where class members received a *pro rata* share based on their number of work weeks); *Pierce v. Rosetta Stone, Ltd.,* No. 11 Civ. 01283, 2013 WL 1878918, at *3 (N.D. Cal. May 3, 2013) (granting preliminary approval where class members' shares of the settlement "will be disbursed on a pro rata basis . . . based on the number of workweeks" they were employed).

Third, although Ms. O'Keefe criticizes Defendants for treating current and former CAAs differently, Ex. B (Peneda Decl.) Ex. C (O'Keefe Objection) at 1, the settlement ameliorates that concern by obtaining relief for all CAAs, including former CAAs to whom Defendants would not have paid anything, such as Ms. O'Keefe.  While this was an important goal of the suit, contrary to Ms. O'Keefe's claim, *see* Ex. B (Peneda Decl.) Ex. C (O'Keefe Objection) at 2, from its inception, the case also sought to protect the rights of current CAAs by negotiating a portion of the liquidated damages that Plaintiff claimed all CAAs were owed on top of their unpaid overtime.  Bien Decl. ¶¶ 32-34.

Fourth, although different methods were used to determine their respective shares, the Settlement Agreement does not treat former CAAs worse than current CAAs – and Ms. O'Keefe has not claimed that it does.  The Settlement Agreement allocates more than half of the funds for all class members to former CAAs like Ms. O'Keefe – $450,281 out of $817,600.  Bien Decl. ¶ 34.  Ms. O'Keefe also has not claimed that former CAAs as a group or any particular CAA would have fared better if the calculation method were different.  Ms. O'Keefe personally fared very well under this calculation method.  She was among the highest paid Class Members.  *Id*. ¶

41.  Her award will be higher than all but two Class Members in the group that self-reported their overtime hours.  *Id*.

Finally, Ms. O'Keefe objects that the amount of the settlement representing liquidated damages (20%) is too low.  Ex. B (Peneda Decl.) Ex. C (O'Keefe Objection) at 1.  Although liquidated damages are generally awarded to prevailing plaintiffs under the FLSA, *see Herman v. RSR Sec. Servs., Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999), courts routinely approve settlements that are "only a fraction of the potential recovery" given the risks of litigation.  *Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982); *see Morris*, 859 F. Supp. 2d at 621 (overruling objection that settlement was too low and holding that even if best possible recovery was $125 million, "it would not bar approval of the settlement, given the risks"); *Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").  In light of the substantial amount that the settlement makes available to the class and the litigation risks, the fact that a relatively small portion is designated as liquidated damages does not undermine the fairness of the settlement.  *See Morris*, 859 F. Supp. 2d at 621 (overruling objection that settlement was too low where it represented "approximately 38% of the estimated value of the case").[5]

---

[5]    Although the NYLL also allows for an award of liquidated damages, it is not settled whether Class Members would have received an award of liquidated damages under both the FLSA and NYLL.  *See Inclan v. New York Hospitality Grp.*, 12 Civ. 4498, 2015 WL 1399599, at *10-12 (S.D.N.Y. Mar. 26, 2015).

**III.**     **Approval of the FLSA Settlement Is Appropriate Under Federal Law.**

Plaintiff also requests that the Court approve the settlement of the FLSA claims.  She has brought her FLSA claims as a collective action.  Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it.  *See Ansoumana v. Gristede's Oper. Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001).  Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions.  *McKenna v. Champion Int'l. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *Lizondro-Garcia*, 2014 WL 4996248, at *6.  "Accordingly, an FLSA settlement is examined with less scrutiny than a class action settlement; the court simply asks whether the settlement reflects a fair and reasonable compromise of disputed issues that was reached as a result of contested litigation."  *Lizondro-Garcia*, 2014 WL 4996248, at *6.  Courts typically regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement.  *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-54 (11th Cir. 1982).

Because the Settlement Agreement resolves a *bona fide* dispute and was reached after vigorous arm's-length settlement negotiations, it should be approved.  *See Lizondro-Garcia*, 2014 WL 4996248, at *6.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court: (1) finally certify the settlement class; (2) grant final approval of the class action settlement; and (3) approve the FLSA settlement.

Dated: June 3, 2015
       New York, New York

Respectfully submitted,
**OUTTEN & GOLDEN LLP**

By:    <u>/s/ Rachel Bien</u>
       Rachel Bien

       **Outten & Golden LLP**
       Rachel Bien
       Olivia J. Quinto
       3 Park Avenue, 29th Floor
       New York, New York 10016
       Telephone:  212-245-1000
       ***Attorneys for Plaintiff and the Class***